1
2   **SUSAN MARTIN (AZ #014226)**
    **DANIEL L. BONNETT (AZ #014127)**
    **JENNIFER KROLL (AZ #019859)**
3   **MARK A. BRACKEN (AZ Bar No. 026532)**
    **MARTIN & BONNETT, P.L.L.C.**
4   1850 N. Central Avenue Suite 2010
    Phoenix, Arizona 85004
5   Telephone: (602) 240-6900
    smartin@martinbonnett.com
6   dbonnett@martinbonnett.com
    jkroll@martinbonnett.com
7   mbracken@martinbonnett.com

8   **DOUGLAS B. LIPSKY (NY #4352076)**(*Pro Hac Vice*)
9   **BRONSON LIPSKY LLP**
    630 Third Avenue, Fifth Floor
10  New York, NY  10017-6705
    Telephone: (212) 444-1024
11  Fax:  (212) 444-1030
    dl@bronsonlipsky.com
12
    *Attorneys for Plaintiffs and Settlement Class*
13

14  **MICHELLE H. GANZ (AZ #023651)**
    **OGLETREE, DEAKINS, NASH, SMOAK**
15  **& STEWART, P.C.,**
    Esplanade Center III, Suite 800
16  2415 East Camelback Road
    Phoenix, AZ  85016
17  Telephone:  (602) 778.3700
    Fax:  (602) 778.3750
18  michelle.ganz@ogletreedeakins.com
19

20  **KEVIN P. HISHTA (GA #357410)** (*Pro Hac Vice*)
    **MARGARET SANTEN HANRAHAN (GA #578314)** (*Pro Hac Vice*)
21  **OGLETREE, DEAKINS, NASH**
    **SMOAK & STEWART, P.C.**
22  One Ninety One Peachtree Tower
23  191 Peachtree Street, NE, Suite 4800
    Atlanta, Georgia  30303
24  Telephone:  (404) 881-1300
    Fax:  (404) 870-1732
25  Kevin.Hishta@OgletreeDeakins.com
26  Maggie.Hanrahan@OgletreeDeakins.com

27  *Attorneys for Defendant Holsum Bakery, Inc.*

28

1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT

7                              DISTRICT OF ARIZONA

8
Milan Dusik, on behalf of himself and
9    other similarly situated,                    No.  CV12-00648-PHX-NVW

10                    Plaintiffs,

11           vs.                                   **JOINT MOTION FOR FINAL**
                                                   **APPROVAL OF CLASS AND**
12   Holsum Bakery, Inc. and John Does # 1-        **COLLECTIVE ACTION**
     10,
13
14
15                    Defendant.

16
17
18           Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Section 216(b) of the

19   Fair Labor Standards Act,  the Court's Order Granting Joint Motion for Preliminary

20   Approval of Settlement and Authorizing Notice to Class Members ("Preliminary Order")

21   (Doc. 38), the terms of the parties Settlement Agreement dated February 18, 2013

22   ("Settlement" or "Agreement") (Doc. 35-1 at 10-36), and the Court's Order dated

23   February 21, 2013 (Doc. 38), and in accordance with the provisions of the Agreement,

24   the parties respectfully request that the Court grant final approval of the Settlement and

25   enter the proposed Order Approving Final Settlement Agreement and Final Class Action

26   Judgment filed herewith.

27
28

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff, Milan Dusik, and Defendant, Holsum Bakery, Inc., respectfully submit this memorandum of points and authorities in support of their Joint Motion for Final Approval of Settlement of the Class and Collective Action.

## I.   INTRODUCTION

Plaintiff Milan Dusik ("Plaintiff" or "Dusik") filed a lawsuit against Holsum Bakery, Inc. ("Defendant"), on behalf of himself and all others similarly situated, under Section 216(b) of the Fair Labor Standards Act, as amended, and the Arizona Wage Statute, Ariz. Rev. Stat. § 23-350 *et. seq*. The parties reached an agreement to settle the case and filed a Joint Motion for Preliminary Approval of Settlement on February 18, 2013 which sought preliminary approval of an agreement between the parties to resolve all claims that were or could have been asserted in this matter, certified both a Federal Class and Rule 23 Class (collectively, the "Class") for purposes of settlement, approved a form of notice and claim form and authorized that both the notice and claim form be provided to members of the Class.  (Doc. 35)  The Court entered an Order on February 21, 2013 (Doc. 38):

(1)   granting preliminary approval of the proposed settlement, including the proposed claim form to be mailed to eligible Class members;

(2)   granting approval of the proposed form and manner of class notice;

(3)   certifying, for settlement purposes only, the two settlement classes covered by the Settlement;

(4)   appointing Milan Dusik as class representative, and Daniel L. Bonnett and Mark A. Bracken of Bonnett & Martin, PLLC and Doug Lipsky of Bronson Lipsky LLP as co-lead class counsel;

(5)   appointing RG2 Claims Administration, LLC as Claims Administrator for the Settlement; and

(6)   establishing deadlines for the filing of a motion for attorneys' fees and service award for the representative plaintiff; for Class Members to opt out or file objections to the proposed Settlement; for filing of papers in support of final approval of the proposed Settlement; for a hearing on final approval of the proposed Settlement; and for the filing of claim forms for Class Members.

2

## II.   BACKGROUND

As the parties set forth in the Joint Motion for Preliminary Approval of Settlement, Plaintiff filed this lawsuit on March 27, 2012 on behalf of himself and all other "similarly situated" "forepersons," known as "leads,"[1] alleging that Defendant engaged in a "policy, pattern or practice" of failing to pay for all time worked in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and Arizona Wage Payment Statutes, A.R.S. § 23-350, *et. seq.* ("Arizona Wage Payment Statutes").   More specifically, Plaintiff alleged that Defendant knew or should have known that leads performed work during their unpaid meal periods yet failed to pay them for this time. Further, Plaintiff alleged in the Complaint that Defendant's "auto-deduct" policy, which automatically deducted thirty (30) minutes of time from each employee's pay for lunch, was unlawful and supported its request for class certification.   The Complaint requested both preliminary and injunctive relief together with other appropriate equitable relief intended to prohibit this practice.   (Doc. 1 at p. 10)  Defendant denied Plaintiff's allegations, including that the auto-deduct policy was *per se* unlawful.

Sixty-one (61) individuals held the lead position from March 27, 2009 to March 27, 2012, the time period at issue.   The lead employees worked in four different departments: Production, Shipping, Engineering and Sanitation. Given the job demands, staffing, and nature of work in the Production and Shipping Departments, leads in those departments were more likely to miss a lunch, or be interrupted during their lunch, than leads in the Engineering and Sanitation departments whose schedules were more predictable.   Further, discovery revealed that approximately fifteen percent (15%) of leads always or almost always received their full thirty-minute lunch, without

---

[1] Plaintiff incorrectly referred to the lead position as "Foreperson."  While the term "Foreperson" was previously used at Defendant, the Foreperson position no longer exits. Rather, the title of the position held by Plaintiff is "lead."  Notwithstanding, there is no dispute among the parties as to those positions and individuals who are members of either class.

interruptions, and approximately fifteen percent (15%) only missed or were interrupted during one to two (1-2) lunches a month.  Of the remaining employees, approximately thirty percent (30%) missed or were interrupted during lunch one to two (1-2) days a week.  It was estimated that this happened more frequently for approximately thirty-three percent (33%) of this remaining group.  *See* Joint Motion for Preliminary Approval of Settlement. (Doc. 35)

After engaging in written discovery, exchanging numerous records relating to Plaintiff's claims and briefing issues raised by Defendant's motion to dismiss,  the parties participated in a formal, day long mediation with Hunter Hughes, Esq., a mediator with years of experience successfully mediating class and collective actions, including numerous wage and hour actions. The parties engaged in substantial arms-length negotiations over a twelve-hour period and reached a settlement.

Following the mediation, the parties engaged in further extensive deliberations, again with the assistance and insight of the mediator, Hunter Hughes, regarding the final allocation formula to govern disbursement of the agreed settlement fund.   The final allocation formula agreed upon by the parties takes into account the total number of weeks worked by all Class members and the department in which he/she worked.  This formula was submitted as part of the Joint Motion for Preliminary Approval of Settlement and preliminarily approved by the Court in its February 21, 2013 Order. (Doc. 35 & 38)  In addition, consistent with the injunctive relief requested by Plaintiff on behalf of all Class members, the Settlement also provided an acknowledgement on the part of Defendant that it had revised its payroll policy and was no longer using (and would not use) the "auto-deduct" feature in its Kronos system to automatically deduct time for lunch breaks.

Following preliminary approval of the Settlement by the Court, the parties worked with a third party claims administrator, RG/2 Claims Administration LLC ("RG/2 Claims"), to distribute the Court approved "Notice of Settlement of Wage/Hour Class and

Collective Action" ("Class Notice") and Court approved Claim Form to members of the Class.  RG/2 Claims provided periodic reports of the mailing of Class Notices and receipt of Claims Forms to counsel for the parties who conferred with the third party claims administrator for the purpose of attempting to verify addresses and other available contact information for accuracy.

Under the terms of the Settlement and approved Class Notice and Claim Form, Class members wishing to participate in the monetary portion of the Settlement (by receiving a distribution according to the allocation formula reached as part of the Settlement) were required to timely submit a completed Claim Form postmarked no later than May 3, 2013.[2]  To ensure Class members received adequate notice of the settlement, on April 30, 2013, the parties separately agreed to send a reminder notice to all Class members who had not responded, which extended the response deadline to May 10, 2013.

The Order granting preliminary approval also provided that Class Counsel could file a motion for approval of attorneys' fees, costs, and a service fee award to the Class Representative.   A Motion for Approval of Award of Attorneys' Fees, Costs and Service Fee Award to Plaintiff was timely filed, along with supporting declarations and exhibits, on June 12, 2013.  (Doc. 39)   The Order granting preliminary approval provided that any Class member wishing to "opt-out" of the Rule 23 Class had to submit an opt-out request postmarked no later than May 29, 2013. No Class members have submitted opt-out forms. June 26, 2013 was ordered as the postmark deadline for submitting objections to Motion for Approval of Award of Attorneys' Fees, Costs and Service Fee Award to Plaintiff.  (Doc. 38) The Notice informed Class members of their right to object to the Settlement and/or appear at the final approval hearing in Court, and instructed to contact the Claims Administrator for instruction on how to do either. No Class members

---

[2] As noted herein, all Class members will benefit from the non-monetary portion of the Settlement, which insures suspension of the practice of automatically deducting thirty (30) minutes for meal breaks.

contacted the Claims Administrator regarding filing an objection, and no objections have been filed.

On July 11, 2013, counsel for the parties discovered that the Notice to Class members inadvertently omitted the date and time of the fairness hearing set for July 30, 2013 and failed to include specific instructions for how to file objections to the settlement.  After conferring and initiating a brief call to the Court, the parties filed a Stipulation for Supplemental Notice to Class Members and Extension for Filing Joint Motion for Final Approval of Class and Collective Action Settlement ("Stipulation") with the proposed form of supplemental notice ("Supplemental Notice") attached. (Doc. 42) The Supplemental Notice contains the date, time and location of the fairness hearing and explains Class members' right to file objections and to appear at the fairness hearing in support of or in opposition to the Settlement, Class Counsel's request for attorneys' fees, and/or payment of an incentive award to the Class Representative.  On July 12, 2013, the Court approved the Stipulation and Supplemental Notice and authorized distribution to all Class members.  On that same day, July 12, 2013, Class Counsel mailed the Supplemental Notice to all Class members by first class U.S. Mail.

Accordingly, the parties now make their joint request for an order granting final approval of the Settlement and entry of final judgment.   In addition, Plaintiff and Class Counsel hereby renew their motion for Approval of Award of Attorneys' Fees, Costs and Service Fee Award to Plaintiff.

## III.   ARGUMENT

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for any compromise of claims brought on a class basis. *See* Fed. R. Civ. P. 23(e).  Approval of a proposed settlement lies within the discretion of the District Court.  *Staton v. Boeing,* 327 F.3d 938, 959 (9th Cir. 2003). *See also Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1025 (9th Cir. 1998) ("Fed. R. Civ. P. 23(d) vests a district court with authority and discretion to protect the interests and rights of class members and to ensure its control

over the integrity of the settlement approval process.  Court approval is also required for any settlements involving claims under the Fair Labor Standards Act. *See Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1352-53 (11th Cir. 1982). In the Ninth Circuit, there is a "strong judicial policy that favors settlements," particular where, as here, class action litigation is involved. *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992).

In determining whether final approval is appropriate, the primary issue before the Court is whether the Settlement is within the range of what might be found fair, reasonable and adequate. *Id.*  When making this determination, the Court need not reach any ultimate conclusion on the issues of fact or law that underlies the dispute, nor must the Court engage in a trial on the merits.  *See Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615 (9th Cir. 1982), *cert denied*, 459 U.S. 1217 (1983).  Further, the Court "need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)93)(D), for the proposal is that there be no trial." *Amchem,* 521 U.S. at 620.

The proposed final Settlement is fair, reasonable and adequate for the members of the Class.  The principal terms of the Settlement are summarized below:

**A.**    **Scope:**  Final approval of the Settlement will settle all claims set forth in the Complaint (Doc. 1), as well as all wage and hour claims that could have been asserted by individuals who timely filed Claim forms under federal, state or local law arising out of employment with Defendant during the period March 27, 2009 up to and including February 21, 2013 and all of the claims under the Arizona Wage Statutes that were or could have been asserted by the Rule 23 Class members from March 27, 2011 to February 21, 2013 (the "Released Claims").

**B.**    **Settlement Consideration:**  When the Settlement is Final, the distributions will be made to the Class members who timely submitted Claim forms to the third party claims administrator, RG/2 Claims Administrator LLC ("RG/2 Claims").  Thirteen (13)

members of the Class submitted completed Claim forms out of a potential pool of sixty-one (61) individuals.  No Class member elected to opt out of the Settlement.  Equally significant is the important Class-wide remedy that Defendant no longer automatically deducts time for meal breaks for members of the Class.  Class members are currently "clocking-in" and "clocking-out" during meal breaks as well as whenever a meal break is interrupted.  On a going forward basis, this will make it improbable that any Class member will not be compensated for time spent working even if during a scheduled meal break.  This benefits all members of the Class including those who elected not to complete and submit Claim forms for purposes of receiving a monetary distribution from the Settlement Fund.

After the exercise of due diligence, Class Counsel and counsel for Defendant are convinced that the notice to members of the Class was adequate; that the number of Claim forms submitted is representative of the actual number of Class members who affirmatively elected to submit Claim forms; that no threat or coercion on the part of any individual, entity or party was directed at any member of the Class to prevent or impede completion and/or the timely submission of a Claim form; that important prospective equitable relief has been obtained for all members of the Class; and that it is in the best interest of the Class that the Settlement be finally approved.

**C.**   **Plan of Allocation:**   The Settlement amount of $225,000.00 will be allocated and paid as follows:

**1.**   **Allocation and Distribution to Claimants**.  Based on the formula set forth in the Settlement, approximately $31,000[3] will be paid to thirteen members of the Class who timely submitted completed Claim forms.  All Class members, regardless of receipt of any monetary consideration, benefit from the revised policy of now "clocking-in" and "clocking-out" during meal breaks or if a meal break is interrupted.  It will be highly

---

[3] This amount is a preliminary calculation from the Claims Administrator, subject to minor adjustment during the final calculation and distribution.

improbable that any Class member will not be compensated for time spent working, even if interrupted during a scheduled meal break.

**2.**      **Fee and Service Award**.  The amount of the attorneys' fees and service fee awards will be determined by the Court.  Plaintiff has filed a motion for a fee award $67,500.00 which is 30% of the Settlement Fund.   (Doc. 39)  Part of the request for an award of attorneys' fees includes $1,039.76 for costs advanced by Class Counsel during the litigation which they have agreed is included in the total request of $67,500.00. (Docs. 39-1 at ¶ 12; 39-2 at ¶13)  In addition, a service fee award of $5,000.00 has been requested for the Class Representative, Milan Dusik, for his invaluable assistance to Class Counsel during the litigation and mediation process.  (Doc. 39)  Defendant does not object to Plaintiff's fee motion and application.

**3.**      **Reversion of Portion of Settlement Fund**.   Under the terms of the Settlement, the remainder of approximately $100,000[4] in the reversionary fund, after payment to those Class members who submitted Claim Forms, payroll taxes, attorneys' fees and costs, and all administrative fees, will revert to Defendant.   (Doc. 35-1 at 10-36)

**4.**      **Released Claims**.  Upon final approval and as set forth in the Settlement, the named Plaintiff and each Claimant will be deemed to have forever released and discharged Defendant from the released claims, as discussed above and as set forth in the Settlement Agreement, during any part of the period from March 27, 2009 to and including February 21, 2013 that were or could have been brought in the litigation. Any Rule 23 Class member will be deemed to have forever released and discharged Defendant from the Arizona Wage Act claims during any part of the period from March 27, 2011 to and including February 21, 2013.

**D.**      **Notice to Class Members**

Plaintiff, Class Counsel and RG/2 Claims have performed searches to locate members of the Class.  These search methods consisted of Defendant providing a list of

---

[4] Subject to final calculation by the Claims Administrator.

names and addresses of Class members to RG/2 Claims derived from Defendant's current and archived payroll data.  Upon receipt of this information, RG/2 Claims conducted United States Postal Service National Change of Address searches to verify updated mailing addresses.  On March 5, 2013, RG/2 Claims served "Notice Packets" containing the Court approved "Notice of Settlement Wage/Hour Class and Collective Action" and the approved "Claim Form" by First Class U.S. Mail to the Class members.   See Declaration of Claims Administrator filed herewith, as Exhibit "A.".

Eighteen (18) Notice Packets were returned as undeliverable after which RG/2 Claims and Class Counsel conducted further searches to update these mailing addresses. New Notice Packets were sent to six (6) Class members at new addresses.  No new addresses or contact information could be located for twelve (12) Class members.  By agreement of the parties, a postcard reminder of the deadline to submit completed Claim forms was mailed to all Class members using the best available address information. This reminder postcard also extended the deadline for submitting a Claim Form by seven (7) days. A Supplemental Notice was mailed to Class Members on July 12, 2013.

## IV.   THE SETTLEMENT MEETS THE STANDARDS FOR FINAL APPROVAL UNDER RULE 23(e)

The Court has wide discretion in making the final determination as to whether to finally approve a proposed settlement.  *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986); *In re Mego Financial Corp. Securities Lit. v. Nadler*, 213 F.3d 454, 458 (9th Cir. 2000). Courts have consistently held that the function of the court reviewing a settlement is to determine whether the proposed settlement, taken as a whole, is fundamentally fair, adequate, and reasonable, not to rewrite the settlement agreement or to resolve issues intentionally left unresolved by the parties.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982)).

///

///

In evaluating whether to provide final approval to a settlement, the courts generally consider the same eight factors in determining whether a settlement is fundamentally fair, reasonable and adequate:

    (1)     the strength of the plaintiffs' case;
    (2)     the risk, expense, complexity, and likely duration of further litigation;
    (3)     the risk of maintaining class action status throughout the trial;
    (4)     the amount offered in settlement;
    (5)     the extent of discovery completed, and the stage of the proceedings;
    (6)     the experience and views of counsel;
    (7)     the presence of a governmental participant; and
    (8)     the reaction of the class members to the proposed settlement.

*See, e.g., Staton v. Boeing*, 327 F.3d 938, 959 (9th Cir. 2003) (*citing Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003)); *Mego Financial Corp.*, 213 F.3d at 458; *Hanlon*, 150 F.3d at 1026; *Draney v Wilson, Morton, Assaf & McElligott*, Civ. 79-1029, 1985 WL 5820, *1 (D. Ariz. Sept. 30, 1985). As set forth in the Joint Motion for Preliminary Approval of the Settlement and as summarized herein, the Settlement is a fair, reasonable and adequate result.

### A.    The Strength of Plaintiffs' Case and the Significant Risk, Expense, Complexity and Likely Duration of Further Litigation All Support the Final Settlement

The risks, delay and expense that will be avoided by final approval of the Settlement is significant. If the Settlement is not approved, a substantial and significant amount of additional work will need to be done, including the completion of further discovery, motion practice and a likely trial on the merits on either a class or individual basis. Plaintiff filed this lawsuit on behalf of himself and all other "similarly situated" "forepersons," known as "leads", alleging that Defendant engaged in a "policy, pattern or practice" of failing to pay for all time worked in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the Arizona Wage Payment Statutes, A.R.S. § 23-350, *et. seq.* ("Arizona Wage Statutes"). Specifically, Plaintiff alleged that Defendant

knew or should have known that leads or forepersons performed work during their unpaid meal periods yet Defendant failed to pay them for this time. Additionally, Plaintiff alleged that Defendant's "auto-deduct" policy, which automatically deducted thirty (30) minutes of time from each employee's pay for lunch, was unlawful, supported the request for class certification, and should be preliminarily and permanently enjoined

There is no assurance for either party that they would prevail on all claims on summary judgment or at trial given the nature of the claims and defenses asserted in this action.  For example, as explained in the Joint Motion for Preliminary Approval, Defendant has asserted as a defense that Class members are not all similarly situated and advised Class Counsel that it is prepared to vigorously contest class and collective action treatment if final approval is denied.  In addition, Defendant also has asserted as a defense that Plaintiff's and Class's claims are claims are preempted by Section 301 of the Labor Management Relations Act ("LMRA") because they required interpretation of various provisions in six separate collective bargaining agreements to which Plaintiff and those he sought to represent were subject.

Additionally, the request for Class-wide injunctive relief would likewise require extensive discovery and a hearing to determine if injunctive and other equitable relief was appropriate on a preliminary and /or permanent basis.  The Settlement eliminates any need for such discovery and hearing by insuring that the equitable relief requested in the Complaint is implemented and remains in effect.

Final approval of the Settlement saves the parties and the Court the time, cost, and effort of resolving these claims and defenses through litigation.  It also provides prospective equitable relief for all Class members because Holsum is no longer automatically deducting time for meal.  *See Nat'l Rural Telecom. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D.Cal. 2004) (unless settlement is clearly inadequate, approval is preferable to lengthy and expensive litigation with uncertain results).

Given the complexity of the factual and legal issues to be litigated, remaining in the risks to Class members and the potential for further delay, all parties and their counsel believe that final approval of the Settlement is a fair, reasonable and adequate result and in the best interests of all Class members.  It completely eliminates the risk that there could be no monetary recovery for any Class member and advances a non-monetary benefit to all Class members on a going forward basis by of the suspension of the "auto-deduct" policy for meal breaks and reliance on a more accurate "clock-in" and "clock-out" procedure.  *See for example In re Syncor ERISA Litigation*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Nat'l Rural Telecom. Coop.,* 221 F.R.D. at 526 (C.D. Cal. 2004).

## B.    The Amount Offered in Settlement is Fair and Reasonable

The amount of the Settlement is $225,000.00, however; this is a claims-made, reversionary amount whereby a portion will revert to Defendant.  As stated in the parties' Joint Motion for Preliminary Approval, the agreed amount of the Settlement Fund represents 90% of the estimated value of the claims if all eligible Class members elected to file Claim Forms.  Any Class member who did not submit a Claim Form or request to opt-out of the Settlement presumptively has no uncompensated meal break or, alternatively, chose to forgo making a claim for reasons known only to those individuals. Absent members of the Class were under no obligation to explain the reason for not submitting a Claim Form and none were provided.  Based on Defendant's internal investigation, the non –privileged portion of which was verbally disclosed to Class Counsel, there were a number of current employees included in the Class who could not recall having their meal breaks interrupted.  This is the most likely explanation for the number of Claim forms that were submitted.  Notwithstanding this, the amount to be distributed pursuant to the Settlement compensates those Class members who submitted Claim forms for their unpaid meal breaks during the period covered by the Settlement.

Final Settlement is clearly appropriate in light of the uncertainties of trial.  *Mego Financial Corp.*, 213 F.3d at 459.  In *Mego*, the Ninth Circuit approved a settlement that

was 42% of estimated damages and stated that even using the objectors' damages estimates, a settlement of 14% would be fair. *Id.  See also Officers for Justice v. Civil Serv. Com'n of City and County of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982); *In re Charles Schwab Corp. Sec. Litig.*, C 08-01510 WHA, 2011 WL 1481424 (N.D. Cal. Apr. 19, 2011) (approving recoveries of between 23.4 and 35.9 percent of estimated damages: the funds "represent a substantial percentage of their requested damages. In other words, this is a good settlement for the class."); *In re Heritage Bond Litigation,* Nos. 02-ML-1475-DT(RCX), 2005 WL 1594389, at * 8 (C.D.Cal. June 10, 2005) (approving class action settlement and holding that after granting requested attorneys' fees, settlement fund that resulted in fund of 23% of the class' total net loss was "exceptional result").  The actual result of the Settlement, if finally approved, will be to compensate those Class members at no less than 90% of their estimated actual damages.

### C.    The Risk of Maintaining Class Action Status Throughout the Trial

Defendant was prepared to oppose class action treatment of Plaintiff's claims as well as the merits and request for injunctive relief for the reasons set forth in the Joint Motion for Preliminary Approval.  This included, but was not limited to, the argument that the claims are pre-empted by Section 301 of the LMRA and that members of the Class were not similarly situated and, therefore, lacked commonality and typicality. Discovery on the issue of commonality and typicality alone would have been protracted and expensive possibly resulting in no collective or class action treatment.   In other words, a great deal of time and expense could have been spent by both Plaintiff and Defendant on class-related issues with no class being certified. The Settlement avoids this possibility and results in recovery for individuals who submitted Claim forms and further injunctive relief for those who did not.

### D.    The Extent of Discovery Completed, and the Stage of the Proceedings

The Settlement was negotiated by a team of three lawyers for Plaintiff and three lawyers for Defendant, all of whom have significant experience in prosecuting and

defending similar cases, including class and collective actions. And, for several months prior to the Settlement, lawyers for both sides engaged in significant factual investigation into the claims and defenses at issue and spent numerous hours reviewing pertinent documents and preparing their own, independent damages calculations. Lawyers for both sides also prepared detailed mediation position statements outlining their respective legal positions. While the parties have not yet completed all discovery that would ordinarily be contemplated in a collective/class action such as this, the discovery that was conducted along with the fact that both parties conducted a significant factual and legal investigation before the mediation, provided each with more than sufficient information to make a reasoned decision about settlement. *See In re Mego Financial Corp. Sec. Litig.,* 213 F.R.D. at 459 ("[i]n the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement."). Further, the Settlement arose from approximately twelve-hours of mediation, under the direction and guidance of Hunter Hughes, a highly experienced mediator who has negotiated hundreds of such settlements throughout his career. *See In re Toys "R" Us Antitrust Litig.*, 191 F.R.D. 347, 352 (E.D.N.Y. 2000) (Use of an experienced mediator to reach a resolution strongly supports that the resolution was, in fact, negotiated at arms' length.). After the mediation, the parties continued to negotiate the allocation formula and other details, with the assistance of Mr. Hughes.

### E.   The Experience and Views of Class Counsel

As set forth in the declarations of Daniel Bonnett (Doc. 39-1), Douglas Lipsky (Doc.39-2) and Thomas Rogers (Doc. 39-4) submitted in support of Plaintiffs' Motion for Award of Attorneys' Fees, Costs and Service Award (Doc. 39) together with the declarations of Daniel Bonnett (Doc. 35-2 at 2-8) and Kevin Hishta (Doc.35-1 at 2-8) submitted in support of the Joint Motion for Preliminary Approval of Settlement (Doc. 35), Class Counsel are experienced class and collective action litigators and are well

equipped to determine whether the proposed Settlement is fair and reasonable. Class Counsel's opinion that the Settlement is fair and reasonable is one of the factors that weigh in favor of final approval of the Settlement both because of Class Counsel's familiarity with the litigation and because of their extensive experience in similar actions. *See In re Washington Pub. Power Supply Sys. Sec. Lit.*, 720 F.Supp. 1379, 1392 (D. Ariz. 1989) (citing *Officers for Justice*, 688 F.2d at 625). Courts may also attach a presumption of fairness, adequacy, and reasonableness to a class settlement reached in arms-length negotiations among experienced, capable counsel after meaningful discovery. *Manual for Complex Litigation* (Third ed.) § 30.42 (1995).

Based on an exhaustive review of the relevant factors in this case, Class Counsel is satisfied that the Settlement is fair, reasonable, adequate and in the best interests of the Settlement Class members and should be finally approved.

### F.   The Final Settlement Was Reached After Extensive and Adversarial Negotiations, and Is Not a Product of Collusion.

There was no collusion between the parties in reaching the Settlement and seeking final approval. Final Settlement approval is requested because it is the result of a high level, arms' length and adversarial negotiation and mediation process. Both parties represented the interests of their clients vigorously and devoted a considerable amount of time, effort and resources to secure the terms of the Settlement before this Court. The arms' length quality of the negotiations is further shown by the fact that the parties engaged in mediation with Hunter Hughes, a nationally-recognized and highly-experienced class and collective action mediator. An agreement containing both monetary and non-monetary components was reached only after a full day of mediation and subsequent communications among counsel and the mediator regarding the allocation formula. A settlement following sufficient discovery and genuine arms' length negotiation is presumed fair. *Nat'l Rural Telecom. Coop.*, 221 F.R.D. at 528 (*citing City P'ship C. v. Atlantic Acquisition Ltd P'ship*, 100 F.3d 1041, 1043 (1st Cir. 2006)).

### G.     The Reaction of the Settlement Class Is Favorable

RG/2 Claims mailed over sixty-one (61) Notice Packets to Class members.  Only twelve (12) individuals identified as members of the Class could not be located for purposes of insuring that notice and a claim form was received.  Attempts were made to locate these individuals but without success.  Out of the remaining forty-eight (48) Notice Packets, thirteen (13) Claim forms were submitted.  This is a 27% participation rate, which is within the range of the normal participation rate in wage and hour litigation, particularly given the number of individuals in the putative class who are current employees.  Courts recognize that current employees are often reluctant to elect to opt-in to an action against their current employer. *See Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 625 (5th Cir.1999) (employees "might be unwilling to sue individually or join a suit for fear of retaliation at their jobs"); *Rutti v. Lojack Corp., Inc.,* 2012 WL 3151077, at *5–*6 (C.D.Cal.2012) (citing empirical study of low participation rate in FLSA cases); *Damassia v. Duane Reade, Inc.,* 250 F.R.D. 152, 163 (S.D.N.Y.2008) ( "employees may feel intimidated about volunteering to participate in an opt-in collective action"); *Ladegaard v. Hard Rock Concrete Cutters, Inc .,* 2000 U.S. Dist. LEXIS 17832, at *14 (N.D.Ill.2000) ("nature of economic dependency involved in the employment relationship is inherently inhibiting").

No objections were filed by any Class member and there were no requests to "opt-out" of the Settlement. Even settlements with significant numbers of objectors (which is not the case here) have been upheld as fair and adequate.  *See, e.g., Van Horn v. Trickey*, 840 F.2d 604, 606 (8th Cir. 1988) (settlement approved despite objections of 45 percent of class members)**.**  Counsel for all parties believe that one probable explanation for the number of Claims Forms and the lack of objections is due to the fact that the "auto-deduct" feature of Defendant's timekeeping procedure is no longer automatically deducting thirty (30) minutes for meal breaks and that there are no employees who are working during meal breaks without being paid.  Further, as noted above, several

employees interviewed claimed that they do not recall ever missing a lunch before the auto-deduct feature was turned off.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff and Defendants respectfully request that the Settlement Agreement be approved as the final Settlement; that the Court approve Plaintiff's Motion for Award of Attorneys' Fees, Costs and Service Fee Award in the amounts requested; dismiss the case with prejudice, and enter the Final Order and Judgment in this case in the manner and form lodged.

RESPECTFULLY SUBMITTED this 15th day of July, 2013.

MARTIN & BONNETT, P.L.L.C.

By: s/Daniel L. Bonnett
    Daniel L. Bonnett
    Susan Martin
    Jennifer L. Kroll
    Mark A. Bracken
    1850 N. Central Avenue, Suite 2010
    Phoenix, AZ  85004
    (602) 240-6900

-and-

BRONSON LIPSKY LLP

By: s/Douglas Lipsky
    Douglas Lipsky (*pro hac vice* pending)
    630 Third Avenue, Fifth Floor
    New York, NY  10017-6705
    (212) 392-4772

    *Attorneys for Plaintiff*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.


By:    s/ Michelle H. Ganz
       Michelle H. Ganz
       Esplanade Center III, Suite 800
       2415 East Camelback Road
       Phoenix, AZ  85016

       Kevin P. Hishta
       Margaret Santen Hanrahan
       One Ninety One Peachtree Tower
       191 Peachtree Street, NE, Suite 4800
       Atlanta, Georgia  30303


       *Attorneys for Defendant Holsum Bakery,
       Inc.*

1

**CERTIFICATE OF SERVICE**

2

    I hereby certify that on July 15, 2013, I electronically transmitted the attached

3

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4

Notice of Electronic Filing to all CM/ECF registrants.

5

6                                    Michelle H. Ganz, Esq.
                                     Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
7                                    Esplanade Center III, Suite 800
                                     2415 East Camelback Road
                                     Phoenix, AZ  85016

8
                                     Kevin P. Hishta, Esq.
9                                    Margaret Santen Hanrahan, Esq.
                                     Ogletree, Deakins, Nash, Smoak & Steward, P.C.
10                                   One Ninety One Peachtree Tower
                                     191 Peachtree Street, NE, Suite 4800
11                                   Atlanta, GA  30303

12

13   s/K. Pasley

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28